Case No. 15-1135 at Elm. Fred Meyer Stores, Inc. Petitioner v. National Labor Relations Board. Mr. Cogan for the petitioner, Mr. White for the respondent. Let's let them get out. It's a little noisy. Yeah. Good morning, your honors. Good morning. We're pausing here, waiting for the courtroom to clear a little bit. I'm sure you're disappointed to learn they weren't all here to hear you. I was going to celebrate out there. You can go ahead. Thank you, your honors. May it please the court, I'm Mitch Cogan here for petitioner Fred Meyer Stores. I've reserved one minute for rebuttal. This case involves a dispute over a contractual access provision in a CBA between Fred Meyer and UFCW Local 555. And the past practices that were developed over the course of decades relate to that provision. Dispute arose on October 15, 2009, when eight non-employee union representatives, with a photographer in tow, descended en masse into Fred Meyer's Hillsboro store. Only two of those eight checked in with management as they were required to do. Nothing like this has ever happened before in the decades of the relationship between the parties. After a 45-minute confrontation on the store floor, where the union reps refused to leave when they were asked, three of the union reps ultimately were arrested for trespass. Ultimately, the board found that Fred Meyer violated Section 8A.5 by unilaterally changing the terms of the access provision and violated Section 8A.1 of the National Labor Relations Act based on some statements made by a manager on the floor during the confrontation. And the board ordered Fred Meyer to pay for all the criminal defense costs for the reps who were arrested. In doing so, the board intentionally ignored and failed to material address substantial Fred Meyer evidence demonstrating that this entire event, including the arrests, was planned by the union, and in fact, it was the union. Does it matter whether it was planned by the union or not? The important thing is that the union did breach the agreement. In the agreement in your brief on page 7, do you really need to show that they planned it in order to show they breached that agreement or past practice? Well, I think the planning that was involved and all of the evidence that supports the planning is significant. Okay. Because it reinforces the fact that there was extensive evidence in this record that supported Fred Meyer's defense that the board completely ignored. And it's for that reason that, had the board not done that, the board should have properly found that it was the union, not Fred Meyer, that breached the contractual access provision. And that in doing so, their conduct was unprotected by the act from the minute they walked in the door. The board erred in three ways. I'd like to start first with the arrests. The board found Fred Meyer liable for the arrests for summoning the police. Well, this court has since, in the Venetian Casino, made clear that when a situation like this, an employer summons the police in an attempt to enforce what it believes is a state trespass violation, well, that conduct is a direct petition to the government, protected by the First Amendment under the Norr-Pennington Doctrine. Did you raise the Norr-Pennington Document or the First Amendment argument before the board? We did not, Your Honor, because it was not possible to. Why not? Because this court decided the Venetian Casino case and specifically determined that the Norr-Pennington Doctrine applied for a direct petition like this in July of 2015. Well, you could have been the first. I mean, I don't know what... Venetian managed to raise it, I assume. It's not impossible to raise something that hasn't been decided before. True, but at that point in time, this case was... that point was still pending. It had been specifically reserved in the earlier Venetian Casino case. The board had subsequently... it had been remanded. The board had subsequently found, in its opinion, in 2011, that it was not a protected... Do you need that to avail... you don't need more time. I mean, if you are correct and the board is wrong, that there was a past practice of only one or two union reps and that became sort of the common law of the agreement, then at least six of the people on the steward's premises were in violation of the agreement. And if that's the case, and there's no dispute about what Oregon Trespass Law says, so they were on the premises for a reason that the employer did not agree with, and you called the police, and the actual arrest was not instigated by Fred Meyer, was it? It was the police discretionary decision. They were escorting these people out. Well, that's exactly right, Judge Randolph, and that is our position as an attorney. In fact, the evidence says the police officer told them if they would leave, they wouldn't be arrested, right? Absolutely, repeatedly. Okay, thank you. And Fred Meyer management asked them... It's a little hard to figure out how you approximately caused that if they had the option. I completely agree with you, Judge Sento. And additionally, we don't necessarily need the Norr-Pennington Doctrine because had the board properly evaluated the evidence here and found that the union breached the past practice with respect to the number of permissible reps at the outset, well, then all of their conduct was unprotected that day. So everything, including the arrests... That seems a little overblown. Wouldn't it follow that two of the people that were on the premises were engaging in protected activity while the other six were not? Why is it that all eight were engaging yet they were not engaged in protected activity? Well, Your Honor, that's where I think we get to the rest of the record that wasn't evaluated and what the intent was here and what the planning the night before, what went on even two days before, reflected that the union intended to cause this confrontation. They wanted to get publicity out of it. That's why they brought the photographer along. The two people that were with, how do you pronounce it, Doster? Doster, yes. That were with Doster. They were not among the three that were arrested, sir. One of them was. One of them. Reid, yes, the international rep Reid, who was from California. She'd been brought in a month or two earlier by the local, in our opinion, just to stir things up. And it was after Reid arrived that all of these access issues began. Historically, the parties had never really had difficulties with these types of things. So what was the justification for refusing to allow those two people who were with Doster to proceed? Why were they kicked out of the school? What's the justification for that? Well, the way it played out, Your Honor, is Doster had an understanding of what the past practice was. His belief was that Reid and this other gentleman, Witt, who brought the photographer along, came in and immediately expressed an intent to engage in conduct inconsistent with past practice. And that they said, we're going to go and talk to the people, and we can talk to them as long as we'd like on the floor. Now, there's a, quote, brief conversation element of the past practice, which the board did properly find that brief conversation past practice should be about one to two minutes. So when they started saying, look, we can talk as long as we want on the floor, as long as we don't interrupt work or the customers, well, that put Doster on his heels. He was like, wait a minute, that's not right. I've got to call my boss. Things escalated from there. Did that answer your question? Well, yes and no. The board said that there was no evidence of disruption of work. Is that true? That's absolutely not true. And that's part of what the significant evidence that the board ignored. If you look through the – I noticed two people that were with Doster. Well, no, actually, there was testimony by Rick Ball. Rick Ball was the – it's difficult to find. You have to dig into the record. The board never even mentioned this. Rick Ball, for many years, was Local 555's organizing and collective bargaining director. Rick Ball testified in undisputed, unrebutted manner that Local 555 had always believed that the limit for reps on the floor was two. And the reason they believed that was because – Where is that in the DA? I'm sorry? Your time is short. Where is that in the DA? Don't give us the whole history if you can get us to it. Your red light's on. We're being nice. It is 410. 410, 411, 415, 416. Rick Ball said the union believed it would be inherently disruptive and would violate the access provision if they came in with more than two. Strong evidence, completely ignored by the law. I think what Judge Randolph was asking you about the two who were talking to Doster, and at that point, he didn't know the others were there. And I guess the question that I have is those two did check in, so they didn't violate that part of the access rule. And so the question is, what is it that they did that did violate it, or how was it that one of them ended up getting arrested? Well, Reed ended up getting arrested because she had been determined the night before that she was going to take the arrest. She insisted that she would not leave the store without being arrested. Okay, well, we have that evidence, so let's suppose we didn't know that. Yes. What did she do while she was there that would have justified her being arrested if we didn't know that this was planned as a publicity stunt or any of that? The reason she was arrested, Your Honor, is that she refused to follow police instructions. Period. But why was she barred from being in the store? What did she do while she was there that warranted Dosser to be kicking her out? Well, ultimately, she created a 45-minute confrontation on the store floor. I mean, even the board determined, look, the past practice here for brief visitation is one to two minutes. So at that juncture, we're talking about 45 minutes in the store that's open with customers all around, and she was causing a disturbance. The one-to-two-minute conversation is per employee, isn't it? I'm sorry? It's in talking to a particular employee, a one-to-two-minute conversation. Yes. Yeah. But the 45 minutes wasn't talking to an employee or was it talking to Dosser? Well, she did talk briefly to an employee, but at that point, continued to argue and confront Dosser for going on 45 minutes. All right. Thank you. Thank you. Good morning. May it please the Court. Eric Weiss on behalf of the Labor Board. I'd like to begin by addressing two arguments that Councilwoman Fleury just made, which I think are very important. First of all, to the point of whether it was a breach of the contract to only have two union representatives check in, the employer never made that argument to the board, nor did the employer make the argument in its opening brief. So it's both barred by Section 10E of the Act and by well-established rules of appellate procedure that that argument has been waived. The argument that the employer was making is that the very presence of eight union representatives in the store, even though they were all separated in pairs and talking to employees separately, was somehow an inherent breach of the contract. So this issue of whether – No, Your Honor, because – Well, go ahead. I'm sorry. The board explicitly found, reviewing all the evidence, that there was no established past practice, and I think the – No, it actually said the judge, the ALJ, found that the parties did not have a clearly defined practice about the number of agents permitted in the store. But the ALJ found there is no doubt that the union practice typically involved one agent at a time. That's correct, Your Honor, and there is some dispute as to whether the board may have misspoken there. I would argue that whether they said the judge found this or not, they clearly made that finding upon reviewing the record. Don't they have to deal with adverse record to make a non-arbitrary and capricious decision when you have adverse evidence, and particularly when you have an adverse finding by the ALJ? Shouldn't we expect the board to deal with that? Well, it wasn't an adverse finding, Your Honor. The dispute is whether the ALJ said he didn't need to make a finding, and I would argue that in this case, the question of whether— You said there's no dispute that the past practice had been one at a time? Something to that effect? Well, typically they said one at a time, but he said he didn't need to make a finding as to whether there was a past practice, and I would argue that in this case, it's functionally equivalent as to whether he has— He had the same evidence before the board. That's correct. Upon which he said there is no dispute what the past practice had been, right? No, that's not correct, Your Honor. He didn't say there's no dispute over the past practice. He said on a weekly or monthly visit, they sent one or two, but he said I'm not going to reach the past practice issue. The board went further and found that there wasn't one. But, Your Honor, here it's functionally equivalent as to saying there is no past practice or there's no finding of a past practice because the burden is on the employer as the one alleging a past practice to prove that it exists. So if the board— Under the Supreme Court's decision in Allentown, Mackville, that the board has to consider evidence that's contrary to one side. That's correct, Your Honor, but the board absolutely did consider all the evidence in this case in finding that there wasn't a past practice. And if I can explain why there wasn't one, the main issue to consider in this case is that this was a contractual access provision. So everything in this case turns in an interpretation of the phrase unreasonable interference with employees in the contractual access provision. So the employee's argument would have more weight if, for example, the access policy itself was established by past practice. So then in that case, you know, they'd only ever send two. Did all the employees or all the union reps first contact the store manager or person in charge? Only two went to the store manager. So why aren't they in violation of the contract provision Well, the employer, first of all, never raised that argument in its opening brief or to the board. And secondly, there's no evidence that that was a requirement of the contract. The words of the contract are set forth that I just read to you. What do you mean there's no evidence that that was in the contract? Well, the contract says you need to check in with the store manager. It does not say every single. So first contact the store manager or person in charge of the store. And part of the delegation went to contact the store manager, and they were prevented from explaining anything else because he immediately said you cannot talk to employees in the store floor and initiated this argument. But it also points the court's attention to page 31 of our brief where we cite record evidence testimony that going back decades, delegations of more than two employees have gone into the stores pursuant to the access provision, which the employer completely ignores. And there's no evidence that in the past when you've had more than two employees that each individual employee has to check in with the store manager. So that issue just was not presented to the board and is not properly before the court. But even if it was, the employer hasn't carried its burden to feel that there's a violation of the contract here. And returning to my point about the contractual nature of the access provision, it's well established under contract law, including in the labor context, that if a party has rights under the contract, it doesn't waive those rights merely by not exercising them. So since we're dealing with a contractual provision, the mere fact that the union typically sent one or two does not establish, does not modify the terms of the contract and does not permit the employer to put its own gloss on the contract. That's what the West Lawrence Care Center case stands for, which we cite in our brief. So there's just no evidence. The employer has just not carried its burden of establishing that there is a past practice. And whether the board affirmatively found there was none or it just did not find that there was one is functionally equivalent as far as this court's review of the case is concerned. The other issue that I wanted to raise was the employer mentioned— I'm sorry, yes, Your Honor? Before you do that, because I understand you to be saying there— It's just what's in the contract, and that's it. Well, the contract is ultimately controlling. There was past practice as to the length of the conversation, but that was established because there had been back and forth between the union and the employer where there had been an agreement that a brief conversation of one or two minutes was what is reasonable within that term, unreasonable interference. So that clearly was an established past practice. But the employer hasn't pointed to any past history between the employer and the union where there was a disagreement about the number of representatives. And I would argue that logically it doesn't make sense to consider the mere fact that you have more than two representatives in this massive store would be an unreasonable interference with employees because they spread out into pairs. They weren't going up to employees eight at a time and trying to talk that way. They're just merely trying to do this faster by sending in four pairs at once rather than one pair as was the typical week-to-week, month-to-month practice. So is your position that unless there is some back and forth, in other words, if a practice is just the way things have always been and everybody does it that way, but the question doesn't come up so that there's some kind of negotiation or discussion between the employer and the employees, you would say then there's no past practice? I think that's correct, especially where you have a contractual access provision. One party to a contract can't just unilaterally place its own boss on that contract. So obviously what's controlling is an unreasonable interference. So if you had a situation which was unprecedented, which did unreasonably interfere with employees, that would be outside the protection of the contract. But as the board emphasized and as the employer has been unable to point to, despite video surveillance of the entire store, there was absolutely no interference with employees' work or the operation of the store on the morning of October 15th. There was this disagreement between two representatives and the manager of the store, but there's no evidence that spilled over to employees or to customers to justify the employer's unfair labor practices. And the other, returning to the employer's opening statement, he made the argument that the union representatives sought to speak to employees inconsistent with the terms of the store visitation clause. Again, that's an argument that the employer did not make in his opening brief and is not properly before the court. But even if the employer had raised that argument, the board's finding, and everything in this case turns on the board's credibility determinations and findings of fact as to what manager Dostert said. And what he said is, I'm sorry, Your Honor. Now you've gone into what you want to talk about, but you may want to remember that the three of us get to decide this. And one of us at least is very interested in knowing where the board gets the power to order these criminal legal fees. In terms of the remedy, Your Honor, I think it's very well established under board precedent that when an employer commits an unfair labor practice such as causing an arrest unlawfully, that remedy is where you have some – one of the places where you have real problems. First place, I'm not sure where the authority came from anyway. But the second place, the record is undisputed that these people were told, if you leave, you won't be arrested, right? Right or wrong? That's not entirely correct, Your Honor, because there was some mention in the employer's argument as to whether the employer initiated these arrests. It's not clear that the police evidence was that if they had left when we asked them to, they would not have been arrested, right? That's not entirely correct, Your Honor, because the employer did affirmatively initiate two of the arrests. When the police approached Ms. Reed – What did the police say? What was the police evidence in this case? There is testimony from the police officers and the arrest reports, but there's also testimony showing clearly that when the police arrived, Manager Doster directed them to arrest Ms. Reed. Managers can't direct police to arrest. Well, they said – The police made the decision to arrest. These people made the decision to stay there and be arrested. And I don't say you get anywhere close to an approximate cause. I mean, Your Honor, that's true in any case where the police arrest someone. No, it isn't. Well, in this case, the manager said, they're trespassing, please arrest them, please remove them. I don't know how much more direct you could have an employer on fair labor practice be, obviously. You could have one with a police officer who didn't say, we told them to leave and they didn't leave, so we arrested them. They said that with respect to one of the three employees, Mr. Marshall. And the issue with Mr. Marshall is he was trying to leave, and he was outside a locked car. And while he was trying to explain that, the police arrested him. But as to the other two employees, Manager Doster affirmatively directed them, I don't want them to be here, please remove them, they're trespassing. And that's what caused the arrest. And if I could just quickly make one final point, I'd emphasize in this case, as we point out in our brief, that all of this discussion as to whether there's a breach of a contract or whether the union representatives lost their protection of the act, et cetera, is irrelevant based on what the unfair labor practices were in this case. Because it's undisputed there's a contractual right to speak with employees on the store floor, and it's also undisputed that as soon as the two representatives approached Manager Doster, he said, you cannot speak with employees. If you want to have those type of discussions, you need to go into the break room. That itself is the initial 8A1 and 8A5 violation. It doesn't matter if there was a breach of the contract occurring elsewhere. It doesn't matter if they were actually engaged in productive conduct because that has the tendency to restrain something that is protected, which is speaking to employees pursuant to the contractual access provision. And so I think we have very strong arguments that there wasn't a breach of contract, et cetera, but the court doesn't even need to reach all of those issues because the initial 8A1 and 8A5 violations occurred in that instant, and a continuation of that occurred when he called the police and had the representatives arrested. And at all times what he was affirmatively saying is what matters, and what he was vocalizing was you do not have a right to speak to employees on the store floor. It would be a much more difficult and very different case if he had said, you're breaching a contract or something vague like that, and we would be here litigating what he meant by that or whether he was correct. But he never said that. What he said was incorrect. The employer concedes that it was incorrect. When he said you cannot speak with employees on the store floor, that's what violated or derogated the contractual access provision, and that's what led to all of the unfit labor practices. So the court doesn't need to reach the breach and all these other issues if it doesn't want to. But even if it does, the board would urge full enforcement of its order. And if there's no further questions, thank you. Thank you. I think you have no time remaining, but we'll give you one moment for rebuttal. One minute. Okay, just briefly, Judge Santel, to address the question about the arrests. In fact, Mr. Doster did ask the representatives to leave in the presence of the police because the police told him he must do that under Oregon state law. Yeah, and that's undisputed, and counsel can't change that. Okay. Don't worry about it. And with respect to the past practice issue, the Sunoco case, 349 NLRB 240, clearly states that a past practice need not be universal, but it's just something that occurs with such regularity and frequency that employees could reasonably expect the practice to continue or recur. Can I just check the JA citations on page 31 of the board's brief? And there is testimony that in two other scores, not this score, that more than two union representatives came in at the same time. The problem is that both of those instances occurred just about the same time as this incident. That is, October of 2009. Correct, and that testimony was by International Rep. Reed, who also testified she had absolutely no training about what the past practice was with regard to stored visitation. Just one other question. I think that counsel agreed that the one- to two-minute limit was, in fact, an accepted past practice, and both sides agreed to that. The board, in its decision, says Reed repeatedly testified during her testimony that the purpose of her store visits was to meet with employees, educate them about the union's bargaining position, give them flyers, and solicit them to sign a health care petition. That actually sounds like rather more than one to two minutes. But what counsel also says is the first word that Dostert ever says to her is you can't talk to employees at all. So I looked through the record trying to find what I could piece together of the confrontation between them. And I'm just wondering if there's any more to that. Does the record actually reflect that that is the first comment that he makes to her? Absolutely not, Your Honor. There was initial discussion between Dostert, Reed, and Witt, in which Dostert believed that Reed and Witt were expressing an intent to violate that past practice with respect to the length of time. As that was occurring, I'm sorry if I'm wrong. Well, what I'm trying to find out is where is that? I had a terrible time with this record trying to find that conversation. So can you cite to some place specifically in the record of the testimony of those two people? Okay. I'm having difficulty finding it at this moment as well. Perhaps I can ask that you either submit later to us where you think in the record that actually appears, or if we could have the record supplemented so that we could have that actual testimony. So the testimony specifically about the initial interaction? The initial interaction of both of those witnesses. Between Reed and Dostert? Yes. I'd be happy to do that. Oh, okay. That's true. Mr. Weiss, perhaps you know where? In terms of the case? Yes. Thank you. I believe the testimony that was credited by the administrative block was approximately It is 213 to 217. It may not be exact, but that vicinity. And that was the testimony of Senior Representative Reed. There's also testimony in the appendix from Representative Witt. And both of those were credited on this issue. And the testimony of Senator Dostert was discredited in an extensive credibility analysis by the administrative block that was put to the firm back in the airport. I think it approximately fits Senator Reed. We'll have the appendix. All right, thank you. So would you like me to supplement that as well? All right. Thank you, Your Honor. The case will be submitted.
judges: Brown, Sentelle, Randolph